CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 1 2 2000

[signature]
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                No. CIV 99-734M/DJS

5.2207 ACRES OF LAND, MORE
OR LESS, SITUATED IN SAN JUAN
COUNTY, STATE OF NEW MEXICO,
and AUSTIN LAND DEVELOPMENT
COMPANY, INC., et al,

Defendants.

## MEMORANDUM OPINION AND ORDER

This is a condemnation action. The case comes up at this time on motions to dismiss filed by Defendant Austin Land Development Company and on a motion of the United States to refer the case to a panel of land commissioners for determination of a fair market price. I have heard oral argument and considered the facts and law, and I deny the motions. The case will be set for a jury trial.

### Defendant's First Motion to Dismiss

Defendant argues that the government's actions are in bad faith and merely a means to allow the United States Department of Energy an escape from contractual obligations. The argument, however, focuses almost completely on facts which are disputed, both in their accuracy and their materiality. It is impossible with regard to these issues to sort out enough

undisputed facts to make a determination, and I find the argument not amenable to disposition pursuant to Fed. R. Civ. P. 12(b). Even if uncontested facts were identified and Defendant's motion were reviewed pursuant to Rule 56, credibility issues alone would preclude a judgment short of trial. Questions of bad faith must be left to a jury.

Defendant additionally contends that as a matter of law the government is not using its power of condemnation for a public purpose, and therefore, pursuant to Fed.R.Civ.P. 12(b)(1), Defendant moves for dismissal for lack of subject matter jurisdiction. Although many of the facts on which Defendant relies are at issue and I have not attempted to resolve factual disputes, sufficient facts are uncontested to permit a ruling on whether or not the stated purpose for the condemnation constitutes a "public use." I find the following facts are material and undisputed:

1. The property at issue consists of three rights-of-way easement tracts approximately fifty feet wide and consisting of approximately 5.22 acres located in San Juan County, New Mexico. In past years, the United States leased two of these tracts from Defendant's predecessor for a natural gas pipeline which extended south and east from Broomfield to Los Alamos, New Mexico, and delivered natural gas to the Los Alamos National Laboratory, an entity presently under the control of the United States Department of Energy (DOE).

2. For more than the last decade, this natural gas pipeline has been operated by the Public Service Company of New Mexico (PNM) or its predecessor under an agreement with the United States. PNM continues to provide natural gas to the area by means of the Los Alamos pipeline, but the pipeline currently in use no longer traverses Defendant's property. The section of pipeline which crosses Defendant's land has not been used to transport gas for several years and is presently in serious disrepair.

3. Some time after expiration of the government's lease, the Army Corps of Engineers, and afterward, DOE decided to acquire Defendant's property, and after its acquisition, to sell it to PNM. Easement title along the entire pipeline, including Defendant's property, if acquired, will be (or already has been) transferred to PNM.

4. After negotiations for the purchase of Defendant's property failed, the United States filed the present case pursuant to Title 40 U.S.C. sec. 258(a) and various other statutory authority to acquire the property by condemnation.

5. On acquisition, the United States will convey the property at issue to PNM by an agreement reached prior to the filing of this case; and PNM. will have sole authority to decide how the property is used and whether it will at any time be used for a gas pipeline.

6. According to the United States, Defendant's property was selected for acquisition because of its past connection to the Los Alamos National Laboratory Natural Gas Pipeline Project and the possibility that it may be needed in the future in connection with the pipeline and delivery of natural gas to the Los Alamos area and the Los Alamos National Laboratory.

7. According to Defendant, the property was selected for acquisition for PNM's private use and to escape repair and removal provisions of the original lease.

8. PNM has no plans to use Defendant's property or the pipeline on Defendant's property in the foreseeable future.

By these facts, Defendant contends (1) the government fails to demonstrate that the private property at issue is being taken for a public use, and (2) if not taken for a public use, the present action exceeds DOE's authority and the subject matter jurisdiction of a federal court. "It is axiomatic," states Defendant, "that 'one person's property may not be taken for the benefit

3

of another private person without a justifying public person.'" Thompson v. Consolidated Gas Corporation, 300 U.S. 55, 57 (1937).

## Standard Applied

The exercise of eminent domain for a public use is "coterminous with the scope of a sovereign's police powers." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 240. It is therefore a determination which rests in Congressional hands. Id.; United States v. 397.51 Acres of Land, Etc., 692 F.2d 688 (10th Cir. 1982). Accordingly, the standard for judicial review is exceptionally low; a court does not invalidate the compensated taking of private property unless the scheme is wholly irrational or the justifying public purpose is inconceivable. Hawaii Housing Authority v. Midkiff, supra. There is, of course, a role for courts to play in reviewing a

> legislature's judgment of what constitutes a public use, even when the eminent domain power is equated with the police power. But the Court in Berman [v. Parker, 348 U.S. 26 (1954)] made clear that it is "an extremely narrow" one. Id. at 32. . . . . deference to the legislature's "public use" determination is required "until it is shown to involve an impossibility." The Berman Court also cited to United States ex rel. TVA v. Welch, 327 U.S. 546, 552 (1946), which emphasized that "any departure from this judicial restraint would result in courts deciding on what is and is not a governmental function and in their invalidating legislation on the basis of their view on that question at the moment of decision, a practice which has proved impracticable in other fields." In short, the Court has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use "unless the use be palpably without reasonable foundation." Hawaii Housing Authority v. Midkiff, supra at 240-241, quoting United States v. Gettysburg Electric R. Co., 160 U.S. 668, 680 (1896).

If it is at all rational for DOE to believe that acquiring Defendant's property and transferring it to PNM will promote or help ensure the future availability of natural gas in northern New

4

Mexico, the exercise of governmental power is not proscribed. See: Hawaii Housing Authority v. Midkiff, supra at 242. "When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings . . . are not to be carried out in the federal courts." Id. at 242-243. "The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public." Id. at 243-244.

All that the record contains, whether proffered by the Plaintiff or the Defendant, supports the essential legality of DOE's actions. Both DOE's stated purpose and its reasoning are clearly within what is required for the exercise of eminent domain. Obviously, DOE's decision to acquire easements along the pipeline route and transfer these to PNM is based on DOE's judgment that (1) if made owner of the natural gas pipeline, PNM will maintain it, (2) PNM will continue to deliver energy to the Los Alamos area which includes the National Laboratory for which DOE is responsible, and (3) relying on PNM to maintain the pipeline and provide the needed energy is a better choice than leaving these responsibilities in DOE. Whether *in fact* DOE's assumptions are correct, that is, whether transfer of the pipeline easements to PNM will ensure maintenance of the pipeline and continuous energy at the Los Alamos National Laboratory, "is not the question." Id. The purpose is legitimate and the means are not irrational. That is all the law requires.

The rationality of including Defendant's property in what is to be transferred to PNM is settled by the proximity of the property to the pipeline corridor, the past use of the property for the pipeline project, the property's relationship to other easements being acquired by the United

5

States and transferred to PNM, and the possibility (even if remote) that at some time in the future, PNM might need or use the property in connection with the delivery of natural gas to the Los Alamos area. It is not inconceivable that PNM may need the easements acquired from Defendant. Thus, the acquisition of Defendant's property meets the test for condemnation. Granted the test is meager, no legal ground exists to invalidate DOE's acquisition of Defendant's property and Defendant's first motion to dismiss must be denied.

### Defendant's Second Motion to Dismiss

Defendant also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure of the United States to join the Public Service Company of New Mexico as an indispensable party. Defendant contends that PNM is a necessary party because the land at issue, if acquired by the United States, will be sold by DOE to PNM for PNM's sole and private use.

The United States avers, however, and Defendant does not contest that PNM will neither receive nor pay the cost of acquiring Defendant's property. Pursuant to Title 40 U.S.C. sec. 258(a), on the filing of this action and deposit of compensation with the court, title passes to the United States alone. Regardless of the price the United States eventually pays Defendant for the taking, PNM will receive the property at a price agreed upon prior to filing of the case, and the outcome of the case makes no difference to PNM's position. It will take ownership of the natural gas pipeline regardless of what happens here. There are no sets of facts, then, upon which it can be supposed that PNM has an interest in this action; and neither the law of eminent domain nor the law which underlies the rules of civil procedure dictates that PNM must be a party.

### Plaintiff's Motion for Appointment of Land Commission

Defendant raises issues triable to a jury beyond fair market value, and Defendant made a

timely jury request. Whether or not the case is more expeditiously disposed of by appointing a land commission, the interests of fairness and justice require this case be heard by a jury.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motions to Dismiss are denied; and IT IS ORDERED that Plaintiff's Motion for Appointment of a Land Commission is also denied.

_____
SENIOR UNITED STATES JUDGE